UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

LEROY HOLLAND,

                Plaintiff,

v.                                                 Case No. 19-cv-539-pp

ANTHONY MILONE, CHAD BOYACK,
MARK DILLMAN, NICHOLAS ROMEO,
and EDDIE TYRPAK,

                Defendants.

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (DKT. NOS. 61, 83) AND DISMISSING CASE**

      Plaintiff Leroy Holland, who was incarcerated when he filed this case and who is representing himself, filed a complaint alleging that the defendants violated his constitutional rights. Dkt. No. 1. The court screened the complaint under 28 U.S.C. §1915A and allowed the plaintiff to proceed on a claim that defendants Milone, Boyack, Dillman, Romeo and Tyrpak used excessive force against him when they arrested him, in violation of the Fourth Amendment to the United States Constitution. Dkt. No. 13 at 5. The court exercised supplemental jurisdiction over the plaintiff's state law claims and allowed him to proceed against the defendants on claims of battery and intentional infliction of emotional distress. Id. at 7-8. Defendant Tyrpak has filed a motion for summary judgment. Dkt. No. 61. Defendants Milone, Boyack, Dillman and Romeo (the "Milwaukee defendants"), who are represented by separate counsel, have filed an amended motion for summary judgment. Dkt. No. 83. The court will grant the defendants' motions and dismiss the case.

## I. The Plaintiff's Allegations

In his complaint, the plaintiff alleged the following:

On Friday, 01-11-2019 I was involved in a high speed chase. I was Pursuided [sic] by two Police officers. Anthony Milone, and Chad Boyack upon Apperhending [sic] me in the back of 4740 N. 41st street, on foot I stopped, And placed my hands behind my head. At this time, one of the officer tackled me to the ground, And then Multiple officer's including, officer Mark Dillman, officer Nicholas Romeo, officer Eddie Tyrpak, officer Anthony Milone, and officer Chad Boyack. They Proceeded to Kicking And Punching me, while I was on the ground.

I was extremely devestated [sic], and in fear for my safty [sic]. And my life. I sustained Multiple injuries in which I was hospitalized for. As well as this report, I would like to file charges for Police brutalitity [sic], Malfensense [sic], Battery, intentional inflictions of emotional distress Along with the intentional inflictions of severe Mental Anguish.

Dkt. No. 1 at 2-3.

## II. Facts[1]

The plaintiff currently resides in Milwaukee County. Dkt. No. 64 at ¶1. Tyrpak was a City of Wauwatosa, Wisconsin police officer and Milone, Boyack, Dillman and Romeo were City of Milwaukee, Wisconsin police officers when the alleged excessive force incident took place. Id. at ¶¶2-6.

On January 11, 2019[2] at 11:10 p.m., Dillman and Romeo, who were on duty in a police vehicle equipped with red and blue emergency lighting,

---

[1] The plaintiff did not file proposed findings of fact and did not respond to the defendants' proposed findings. The facts come from the defendants' proposed findings.

[2] Paragraphs 1 and 2 from the Milwaukee Defendants' Proposed Findings of Fact state the wrong date for the incident. Dkt. No. 84 at ¶¶1-2. The correct date is January 11, 2019, and the court has used that date.

observed a silver Honda Civic with a license plate (188 XHU) that did not match the vehicle. Dkt. No. 84 at ¶¶2-4. Dillman and Romeo, who believed the silver Honda Civic they observed to be the silver Honda Civic taken in an armed carjacking the previous day, attempted a traffic stop near 300 West Concordia Avenue. Id. at ¶¶5-6. The driver of the vehicle, later identified as the plaintiff, refused to stop, accelerated westbound and disregarded red traffic signals at North Dr. Martin Luther King, Jr. Drive and West Concordia Avenue. Id. at ¶7. Dillman and Romeo initiated a vehicle pursuit of the Honda Civic because the plaintiff did not stop, the vehicle matched the description of an armed robbery vehicle and the license plate did not match the vehicle. Id. at ¶8.

Boyack and Milone, who were on duty in a marked black-and-white Ford Explorer police vehicle, took over the primary pursuit position, with emergency lights and sirens activated, near North Teutonia Avenue and Burleigh Street. Dkt. No. 84 at ¶¶1, 9. Several officers observed the plaintiff travel at excessive speeds, disregard numerous traffic control devices and pass several motorists, which they believed created a significant risk of serious injury or death to the plaintiff, members of the public, to themselves and to other officers. Id. at ¶10. At 11:13 pm, Milwaukee Police Officers James English and Jordan Hemmings joined the vehicle pursuit and three minutes later, Milwaukee Police Officers Kevin Hansen and Tiffany Williams also joined. Id. at ¶¶11-12. The pursuit, which lasted eighteen minutes from the time it started until the plaintiff was taken into custody after running from the vehicle, extended from the City of

Milwaukee into the City of Wauwatosa, covered over 20.8 miles of city streets and involved speeds that exceeded 100 miles per hour. Id. at ¶¶13-16.

At 11:23 p.m., Tyrpak was on routine patrol near North 100th Street and West Hampton Avenue in Wauwatosa when he heard over the radio that the Milwaukee Police Department was pursuing a silver Honda Civic believed to have been taken in an armed robbery carjacking. Dkt. No. 64 at ¶15. During the pursuit, the Milwaukee Police Department sought assistance from Tyrpak in the form of stop sticks. Id. at ¶16. In response, Tyrpak deployed stop sticks as the suspect vehicle entered the intersection of North 92nd Street and West Hampton Avenue, but the vehicle avoided the stop sticks and continued to flee. Id. at ¶17. Tyrpak continued to monitor the pursuit over the radio, re-positioned in the 9600 block of West Hampton Avenue and deployed the stop sticks a second time. Id. at ¶18. The suspect vehicle drove over the stop sticks, which appeared effective. Id. at ¶19. The vehicle continued, but eventually the passenger side tire, which had been punctured by the stop sticks, fell off the vehicle near 4600 West Hampton Avenue. Id. at ¶20; Dkt. No. 84 at ¶18.

The vehicle pursuit ended near 4740 North 41st Street, in the City and County of Milwaukee. Dkt. No. 84 at ¶19. At 11:28 p.m., the plaintiff jumped out of the vehicle as it was still moving. Id. at ¶20. The Honda Civic hit a parked vehicle. Id. at ¶21. Officers yelled, "police, stop" as and after the plaintiff exited the moving vehicle. Id. at ¶25. The plaintiff ran through a gangway and into the backyard of 4740 North 41st Street. Id. at ¶26. Milone observed the plaintiff run toward a garage located on the property. Id. at ¶27.

He tried to gain control of the plaintiff, but due to the momentum of the chase, both the plaintiff and Milone struck the garage. Id. at ¶28. Milone sought to gain control of the plaintiff's hands to neutralize the safety risk he believed the plaintiff presented and because he did not want to give the plaintiff an opportunity to reach for a weapon. Id. at ¶¶29-30. As Milone attempted a "secure the head technique," Romeo assisted in gaining control of the plaintiff by completing a decentralization of the plaintiff and Milone, which caused all three to fall to the ground. Id. at ¶31. Once the plaintiff was on the ground, he was quickly handcuffed and taken into custody. Dkt. No. 84 at ¶32. Romeo and Dillman assisted in turning the plaintiff over and helping him to his feet. Id. at ¶33. Officers escorted the plaintiff to the marked squad car assigned to English and Hemmings for transport to District 5 Police Station. Id. at ¶34.

About two minutes and ten seconds elapsed from the time the plaintiff abandoned the moving vehicle until officers escorted him to the sidewalk near the transport squad. Dkt. No. 84 at ¶¶35-36; Dkt. No. 76-2, Exh. B, Dillman Body Worn Camera, 18:25–20:35. The only interaction involving use of force between the plaintiff and the Milwaukee defendants occurred in that two minutes and ten seconds. Id. at ¶39.

Rear facing squad video of the vehicle driven by English and Hemmings recorded the plaintiff from the time officers placed him into the transport vehicle up to and after he arrived at District 5 for processing. Dkt. No. 84 at ¶37; ECF No. 75-4, Exh. D, Rear Facing Video of Squad 5428, 21:00–37:00. At 11:38 p.m., squad 5428 (English and Hemmings) left the scene at 4740 North

5

41st Street with the plaintiff to escort him to District 5. Dkt. No. 84 at ¶38. Throughout the transport to District 5, the plaintiff engaged in unsolicited conversation with the transporting officers, including asking questions and making statements referencing the driving of the pursuing officers, who "drive pretty good, too;" as well as a reference that he should be on TV, "should have been a star" with "MPD, Waukesha, everything" pursuing him. Id. at ¶40. They arrived at District 5 Police Station plaintiff at 11:46 p.m. on January 11, 2019. Id. at ¶43.

On January 12, 2019, at 1:15 a.m., Romeo directed the plaintiff into Interview Room 2 at District 5. Dkt. No. 84 at ¶44. The plaintiff was not in handcuffs during the encounter, which was recorded using Evidence.com. Id. The plaintiff refused to make a statement regarding the stolen vehicle. Id. at ¶45. During the interview, the plaintiff did not exhibit any behavior to suggest he was in any fear, distress or discomfort. Id. at ¶46. Later that morning, the plaintiff was transported to St. Mary's Hospital as part of standard procedure when an arrest involves an accident and remained there for about one hour before receiving medical clearance. Id. at ¶47. The plaintiff was transported to the Milwaukee County Justice Facility at 11:44 a.m. Id. at ¶49.

The Milwaukee defendants submitted uncontroverted audio and video recording evidence taken from multiple Milwaukee Police Department body worn cameras and squad car devices depicting the events of January 11, 2019 involving the plaintiff. Dkt. No. 84 at ¶50. There is no video, audio, pictorial or other evidence that Milwaukee Police Officers kicked or punched the plaintiff

during his arrest as alleged in his complaint. Id. at ¶51. (In his brief in opposition to the motion for summary judgment—which is neither signed nor sworn—the plaintiff asserts that the excessive force began after he got out of his car, ran about five yards, stopped and placed his hands on his head. Dkt. No. 88 at 1.)

Defendant Tyrpak's only involvement in the incident was as assisting officer to deploy stop sticks. Dkt. No. 64 at ¶23. He did not assist in taking the plaintiff into custody, did not have any physical contact with the plaintiff on January 11, 2019, and did not speak to him on that date. Id. at ¶¶24-25.

## II. Analysis

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be, or is, genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits

7

or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

B.  Discussion

1.  *Tyrpak*

Defendant Tyrpak contends that the plaintiff has not stated a claim against him because he has not demonstrated that Tyrpak was involved in the plaintiff's arrest. Dkt. No. 62 at 3. It is undisputed that while Tyrpak deployed the stop sticks, he did not participate in the plaintiff's arrest. Tyrpak did not assist in taking the plaintiff into custody and he did not have any physical contact with the plaintiff on January 11, 2019. Section 1983 limits liability to public employees who are personally responsible for a constitutional violation. Burks v. Raemisch, 555 F.3d 592, 595-96 (7th Cir. 2009). For liability to attach, the individual defendant must have caused or participated in a constitutional violation. Hildebrandt v. Ill. Dep't of Nat. Res., 347 F.3d 1014, 1039 (7th Cir. 2003). Because Tyrpak had no personal involvement in the plaintiff's arrest (and therefore could not have participated in the alleged use of

8

excessive force at the site of the arrest), the court will grant his motion for summary judgment.

>     2.   *The Milwaukee Defendants*

The Milwaukee Defendants argue that they used reasonable force to arrest the plaintiff and did not violate his rights under the Constitution or state law. Dkt. No. 72 at 21-23. The plaintiff filed a two-page, unverified response in which he states that officers used excessive force after he got out of the car, ran five yards, stopped and placed his hands behind his head. Dkt. No. 88 at 1. He states that the officers waited ten hours before taking him to the hospital so the swelling in his face would go down. Id. at 2. According to the plaintiff, his head hurt and his vision was blurry, but the police officer did all the talking at hospital. Id. He states that he went to the House of Correction where he saw a doctor and that subsequently he was transferred to Dodge Correctional Institution where staff noticed his face "wasn't right." Id. The plaintiff says that they took him to the hospital, and he continued to go there and see a physical therapist. Id. Now that he has been released, he states that he goes to Aurora Hospital and he also sees a physical therapist. Id.

The court analyzes a claim that a law enforcement officer used excessive force when effectuating an arrest under the Fourth Amendment's objective reasonableness standard. Avina v. Bohlen, 882 F.3d 674, 678 (7th Cir. 2018) (citing Cyrus v. Town of Mukwonago, 624 F.3d 856, 861 (7th Cir. 2010)). "Whether a police officer used excessive force is analyzed from the perspective of a reasonable officer under the circumstances, rather than examining the

9

officer's actions in hindsight." Id. (quoting Dawson v. Brown, 803 F.3d 829, 833 (7th Cir. 2015)). When assessing whether the amount of police force was reasonable, the court looks to circumstances indicating (1) the severity of the suspected crime, (2) whether the suspect posed an immediate threat to the officer on the scene or others, and (3) whether the suspect was actively resisting or attempting to evade arrest. Id.; see also Graham v. Conner, 490 U.S. 386, 396 (1989). The court's goal in examining these factors is to determine "whether the force used to seize the suspect was excessive in relation to the danger he posed … if left unattended." Dawson, 803 F.3d at 833. If there are sufficient undisputed material facts to establish that the officer acted reasonably under the circumstances, the court must resolve the issue as a matter of law, rather than allow a jury to "second-guess" the officer's action. Id. (citing Bell v. Irwin, 321 F.3d 637, 640 (7th Cir. 2003)).

It is undisputed that defendants Dillman and Romeo attempted a traffic stop of the silver Honda Civic the plaintiff was driving because the license plates did not match the car and because they believed it was a silver Honda Civic that had been taken in an armed carjacking the previous day. When the plaintiff failed to stop, Dillman and Romeo initiated a vehicle pursuit that lasted over eighteen minutes, covered over twenty miles of city streets and involved speeds over 100 miles per hours. (The plaintiff himself admitted in his complaint that he was involved in a high-speed chase.) When the plaintiff ran over stop sticks Tyrpak had put down, his tire came off and he slowed down, jumped out of the vehicle while it was moving and ran. Defendants Milone,

Boyack, Romeo and Dillman knew as they were in hot pursuit of the plaintiff that he could be the armed carjacker from the previous day, believed that there was a high probability that he had a weapon, knew that they had observed him commit two felony offenses[3] and believed that he created and posed a serious, potentially grave, threat to their safety, the safety of other officers, pedestrians and other motorists by his conduct that night. Dkt. No. 84 at ¶22.

The plaintiff alleged in the complaint that Milone and Boyack apprehended him and that after he placed his hands behind his head, one of the officers tackled him to the ground. Dkt. No. 1 at 2. Next, the plaintiff alleged that multiple officers, including Dillman, Romeo, Tyrpak, Milone and Boyack kicked and punched him while he was on the ground. Id. The video evidence of the incident flatly contradicts the plaintiff's claims. The Milwaukee Defendants were wearing body cameras during the January 11 incident, both during the pursuit and during the arrest. The body camera recordings show that the plaintiff jumped out of a car and ran from the street through a gate between two houses. Milone was the first out of his car; he ran after the

---

[3] On January 13, 2019, a criminal complaint charging the plaintiff with Attempting to Flee or Elude an Officer, a Class I Felony, and Second Degree Recklessly Endangering Safety, a Class G Felony, was filed in Milwaukee County Circuit Court for the January 11, 2019 events that form the basis of this case. Dkt. No. 84 at ¶52; State v. Holland, Case No. 2019CF181 (Milwaukee County Circuit Court), available at https://wcca.wicourts.gov. On September 13, 2019, the plaintiff was convicted of second degree recklessly endangering safety after pleading guilty. Id. at ¶53. The charge of Attempting to Flee/Elude an Officer was dismissed and read in for sentencing purposes. Id. The court sentenced the defendant to a term of one year of confinement and four years of extended supervision. State v. Holland, Case No. 2019CF181 (Milwaukee County Circuit Court), available at https://wcca.wicourts.gov.

plaintiff (shouting things like "Stop! Police! It's over!") between the two houses, catching up with the plaintiff in a backyard area behind a house. Both men were moving so quickly that when Milone reached the plaintiff, the two of them collided with a garage. Romeo arrived at about the same time, and the three men fell to the ground. Other officers arrived quickly; someone shouted at the plaintiff first to put his hands behind his head, then to put them behind his back. Within seconds, the officers had placed handcuffs on the plaintiff. There was no kicking. There was no punching. There is no indication that the plaintiff was in fear for his safety or his life; he answered questions by the officers, talking to the officers about a family member who had been injured or killed in a car crash. Once the officers had patted the plaintiff down, they helped him to his feet and walked him to the squad car.

When a party's assertion is contradicted by an objective record, such as a videotape, courts must view "the facts in the light depicted by the videotape." Scott v. Harris, 550 U.S. 372, 380-81 (2007) (holding that if one account of the facts "is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment"); Williams v. Brooks, 809 F.3d 936, 942 (7th Cir. 2016) (relying on video from a dashboard camera rather than the non-moving party's account to grant summary judgment because the video clearly depicted the physical confrontation in question).

The record shows that the Milwaukee defendants used no more force than was necessary to apprehend the plaintiff and to secure him. They did not

12

punch him or kick while he lay on the ground (or at any other time during the arrest). A reasonable factfinder could not conclude that the Milwaukee defendants used excessive force when they arrested the plaintiff. See Smith v. City of Chi., 242 F.3d 737, 743-44 (7th Cir. 2001) (holding that if a reasonable officer would think that a suspect who had committed a minor traffic violation was trying to flee, the officer may use a higher degree of force to protect the community and the officers than would otherwise be justified).

Because the court has determined that the plaintiff has no federal claim, the court will relinquish supplemental jurisdiction over the plaintiff's state law claims. See 28 U.S.C. §1367(c)(3); Lavite v. Dunstan, 932 F.3d 1020, 1034-35 (7th Cir. 2019). The court will grant the Milwaukee defendants' motion for summary judgment.

### III. Conclusion

The court **GRANTS** defendant Tyrpak's motion for summary judgment. Dkt. No. 61.

The court **GRANTS** the Milwaukee defendants' amended motion for summary judgment. Dkt. No. 83.

The court **DISMISSES** this case. The clerk will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within thirty days of the entry of judgment. See Federal Rule of Appellate Procedure 3, 4. This court may extend

this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. See Federal Rule of Appellate Procedure 4(a)(5)(A).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within twenty-eight days of the entry of judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 15th day of September, 2022.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER
Chief United States District Judge**